# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

ATCHAFALAYA BASINKEEPER, ET AL             CIVIL ACTION NO. 08-1155

VERSUS                                      JUDGE ELIZABETH ERNY FOOTE

SANDRA THOMPSON-DECOTEAU, ET AL            MAGISTRATE JUDGE C. MICHAEL HILL

## <u>MEMORANDUM RULING</u>

Before this Court is a Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Record Document 57], filed on behalf of Defendant, Stephan Chustz ("Defendant"), in his official capacity as Acting Director of the Atchafalaya Basin Program.  Defendant moves for dismissal of Plaintiffs' complaint in its entirety for failure to state a claim upon which relief can be granted on the basis that the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq., does not permit a private right of action for a violation of the conditions set forth in a permit issued pursuant to 33 U.S.C. § 1344 ("Section 404").  Plaintiffs oppose this motion.  See Record Document 65. For the reasons stated herein, Defendant's motion is **GRANTED** and Plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

## FACTUAL BACKGROUND

On July 8, 2003, pursuant to 33 U.S.C. § 1344 ("Section 404"), the U.S. Army Corps of Engineers issued permit number WQ-204304240 to the Atchafalaya Basin

Program ("the Program").[1]  The Permit authorizes the Program to "[d]redge a section of

Bayou Postillion for enhancement of navigation and increased water circulation, in

accordance with attached drawings in seven sheets, dated September 30, 2003," and

requires the Program to "maintain the activity authorized by this permit in good

condition and in conformance with the terms and conditions of this permit."  [Record

Document 1, Exhibit B at p.1].  The Permit allows for the removal of silt and sediment,

i.e. "spoil", from the riverbed, and directs that spoil from excavation "be placed on

alternating banks to ensure that natural drainage will not be impeded."  Id. at p.10.

Further, the Permit directs that "[a]ll low areas (sloughs, bayous, etc.) that currently

facilitate water flow/exchange within the Bayou Postillion area should not be blocked as

a result of dredge material deposition."  Id. at p.5.

Between January 22, 2005 and July 11, 2005, after obtaining the Permit, the

Program dredged Bayou Postillion creating spoil banks.  Plaintiffs, the Atchafalaya

Basinkeeper and Louisiana Environmental Action Network ("LEAN") (collectively

"Plaintiffs"),[2] allege that the spoil banks created by the dredging are solid across both

---

[1]The Permit was issued in the name of "Sandra Thompson-Decoteau (Atchafalaya Basin Program)", the Director of the Program.  Prior to the commencement of this lawsuit, Ms. Thompson-Decoteau retired from her position as Director of the Program and Defendant Chustz was named Acting Director.  Ms. Thompson-Decoteau and Defendant executed a permit transfer form and, on February 10, 2009, the U.S. Army Corps of Engineers confirmed the permit transfer from Ms. Thompson-Decoteau to Defendant.  See Record Document 22.

[2]Plaintiffs are non-profit corporations dedicated to protecting and maintaining the health of Bayou Postillion and its adjoining wetlands and the Atchafalaya Basin. [Record Document 1, ¶ 14].

banks, with few or no "gaps" or breaks," thus preventing seasonal flooding and causing irreparable damage to the native flora.  [Record Document 1, ¶¶ 41-43].  Plaintiffs claim that the lack of "gaps" or "breaks" in the spoil banks violates the terms and conditions of the Permit and that the dredged spoil placed in the wetlands constitutes discharge of a pollutant in violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 et seq.  Id. at ¶¶ 43-44, 52-63.  In addition, Plaintiffs allege that the Program has violated the terms and conditions of the Permit and the CWA by failing to submit "as-built drawings, a post habitat assessment of vegetative community occupancy and acreage, and pre- and post-project photographs that clearly depict the entire permitted work area," and for failing to provide compensatory mitigation for all unavoidable impacts.  Id. at ¶¶ 45-51, 65-67.  Plaintiffs pray for an order compelling the Program to take appropriate measures to fix the spoil banks along Bayou Postillion so that they are in conformance with the drawings attached to the Permit, an award of civil penalties in the amount of $36,497,500, and an award for expenses and attorneys fees.  Id. at ¶¶ A-C.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  While a complaint attacked by a Rule 12(b)(6) motion need not contain detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations must "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, , – U.S. –, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  In determining whether a plaintiff has pled factual allegations to state a claim that is plausible, the Court may not evaluate the plaintiff's likelihood of success but must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true.  See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2009); see also, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (factual allegations, which taken as true, must be enough to raise a right to relief above the speculative level, even if doubtful in fact).

Turning now to the Plaintiffs' Complaint and the issues raised in Defendant's motion, the Court will examine the applicable law and determine whether the CWA permits a private right of action for a violation of the conditions set forth in a Section 404 permit.

**LAW AND ANALYSIS**

The CWA is a comprehensive statutory regime designed "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. § 1251(a).  In accordance with that goal, the CWA makes unlawful "the discharge of any pollutant", including dredged spoil, unless such discharge is made in compliance with certain enumerated exceptions.  §§ 1311(a), 1362(6).  Two of those exceptions, Section 402 (33 U.S.C. § 1342) and Section 404 (33 U.S.C. § 1344) create a permitting

scheme through which the discharge of pollutants may be authorized.  Section 404 grants the U.S. Army Corps of Engineers ("Corps") the authority to issue permits "for the discharge of dredged or fill material," whereas Section 402 grants the Environmental Protection Agency ("EPA") the authority to issue a permit for the discharge of all other pollutants or combination of pollutants under the National Pollutant Discharge Elimination System ("NPDES").  33 U.S.C. §§ 1342(a), 1344(a).

Pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a):

[A]ny citizen may commence a civil action on his own behalf—

(1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter, or (B) an order issued by the Administrator or a State with respect to such standard or limitation. . . .

Because this action is not one alleging a violation of an order issued by the Corps or a State, the claims asserted by Plaintiffs must be governed by Section 505(a)(1), which authorizes private enforcement suits against any person alleged to be in violation of "an effluent standard or limitation."

Section 505(f) of the CWA defines "effluent standard or limitation" as:

(1)     an unlawful act under subsection (a) of section 1311;

(2)     an effluent limitation or other limitation under section 1311 or 1312;

(3)     standard of performance under section 1316;

(4)     prohibition, effluent standard or pretreatment standards under section 1317;

(5)     certification under section 1341;

(6)     a permit or condition thereof issued under section 1342; or

(7)     a regulation under section 1345(d).

33 U.S.C. § 1365(f).

At first glance, it would appear the applicable definition under Section 505(f) is contained in subsection (f)(6) which deals with "a permit or condition thereof." However, the statute explicitly refers only to permits issued by the EPA pursuant to § 1342 (Section 402).  The parties agree that the Permit at issue in this matter was issued by the Corps pursuant to Section 404 and, therefore, that subsection (f)(6) is not applicable t to the Court's analysis.  See Northwest Environmental Defense Center v. United States Army Corps of Engineers, 118 F.Supp.2d 1115, 1117-18 (D.Oregon 2000).  Rather, Plaintiffs' claims are based on subsection (f)(1) which deals with "an unlawful act" under § 1311(a).  Plaintiffs allege that Defendant's discharge of dredged material fails to comply with conditions set forth in the Section 404 permit and, as a result, that Defendant is liable under § 1311.  See 33 U.S.C. § 1311(a) (providing that "the discharge of any pollutant", including dredged spoil, is unlawful except as in compliance with sections 1312, 1316, 1317, 1318, 1328, 1342, and 1344).  In response, however, Defendant argues that the effluent standards and limitations set forth in § 1311 are only required to be incorporated into Section 402 permits and, therefore, that Section 505(a) does not create a private right of action for enforcement of Section 404 permits.  [Record Document 57].

Section 402(a) provides:

> (1) Except as provided in sections 1328 and 1344 of this title, the Administrator may, after opportunity for public hearing, issue a permit for the discharge of any pollutant, or combination of pollutants, notwithstanding section 1311(a) of this title, upon condition that such discharge will meet either (A) all applicable requirements under sections 1311, 1312, 1316, 1317, 1318, and 1343 of this title, or (B) prior to the taking of necessary implementing actions related to all such requirements, such conditions as the Administrator determines are necessary to carry out the provisions of this chapter.

33 U.S.C. § 1342(a) (emphasis added).

In contrast, Section 404(a) lacks the reference to section 1311 and simply provides that "[t]he Secretary may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites."  33 U.S.C. § 404(a).  Thus, based on the plain language of the statute, only Section 402 permits issued by the EPA are required to incorporate the effluent limitations set forth in § 1311.  Congress distinguished "dredged and fill material" from other pollutants and gave the Corps the responsibility of regulating the discharge of such material "in recognition of the Corps' historical role under section 10 of the Rivers and Harbors Act of 1899 as the permitting agency for dredge and fill activities in the nations navigable waters," and "because the CWA includes the term 'dredged spoil' in the CWA's definition of pollutant.'" Resource Investments, Inc. v. U.S. Army Corps of Engineers, 151 F.3d 1162, 1166 (9th Cir. 1998) (citing 33 U.S.C. §§ 1342, 1362(6) and 42 Fed.Reg. 37,122 (1977)); Northwest Environmental Defense Center v. United States Army Corps of Engineers, 118 F.Supp.2d 1115, 1117 (D.Oregon 2000); see also, Coeur Alaska, Inc. v. Southest Alaska Conservation Council, 129 S.Ct.

2458, 2467 (2009) (recognizing that the EPA's authority to issue permits "for the discharge of any pollutant" is subject to one important exception: "The EPA may not issue permits for fill material that fall under the Corps' § 404 permitting authority."). Because of the Corps' historical role as the permitting agency for dredge and fill activities, Congress chose to develop a separate and independent permitting scheme for the discharge of dredged and fill materials and granted the Corps the authority to issue Section 404 permits without regard to the effluent limitations set forth in § 1311.

Furthermore, the Court finds that Plaintiffs' interpretation of Section 505(f)(1) would render Section 505(f)(6) entirely redundant and superfluous.[3]  It is a general rule of statutory construction that an interpretation "that would render an express provision redundant was probably unintended and should be rejected."  Garcia v. U.S., 88 F.3d 318, 324 (5th Cir. 1996) (quoting Gutierrez de Martinez v. Lamagno, 115 S.Ct. 2227, 2241 (1995) (Souter, J., dissenting)).

A review of the jurisprudence cited by both parties supports this Court's decision, as the cases allowing private citizens to bring suit under the CWA to enforce the standards and conditions set forth in permits have been limited to those cases involving Section 402 permits.  See e.g., Russian River Watershed Protection Committee v. City of Santa Rosa, 142 F.3d 1136, 1138 (9th Cir. 1998); Northwest Environmental Advocates

---

[3]Plaintiffs' interpretation of 33 U.S.C. § 1365(f) would define "effluent standard or limitation" as including: (1) "an unlawful act under subsection (a) of section 1311" (i.e., the discharge of a pollutant without a permit, or the violation of a section 1342 or section 1344 permit of the conditions thereof); and (2) the violation of "a permit or condition thereof issued under section 1342."

v. City of Portland, 56 F.3d 979, 985-990 (9th Cir. 1995); Northwest Environmental

Defense Center, 118 F.Supp.2d at 1118; see also, Jones v. Rose, 2005 WL 2218134

(D.Oregon 2005) (holding that "Section 404(a) permit violations . . . are not included in

the list of statute violations for which a citizen's suit is allowed.").

Thus, after careful consideration of the statutory language and the authoritative

jurisprudence, the Court finds that the CWA does not permit a private right of action to

enforce compliance with a Section 404 permit.  While private citizens may maintain a

private enforcement action against any person for the discharge of dredged and fill

materials without a permit,[4] once a permit is obtained, the Secretary of the Corps  or

the Administrator of the EPA are the only parties who have a right of action to enforce

compliance with the terms and conditions of the permit.  33 U.S.C. §§ 1319, 1344(s).

## CONCLUSION

For the reasons stated herein, the Court finds that Plaintiffs' have failed to state

a claim upon which relief can be granted.  Accordingly, Defendant's Motion to Dismiss

Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Record

Document 57] shall be **GRANTED**, and Plaintiffs' claims shall be **DISMISSED WITH**

**PREJUDICE.**

An Order consistent with this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** on this 20th day of April, 2011.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[4]See e.g., Save Our Community v. U.S. E.P.A., 971 F.2d 1155, 1162 (5th Cir. 1992); North Carolina Shellfish Growers Association v. Holly Ridge Associates, LLC, 200 F.Supp.25 551, 558 (E.D.N.C. 2001).